MILTON ALBERTO MARTINEZ-AVELAR
*In Pro Per*
A-Number: 096-320-923
Adelanto Detention Facility
10250 Rancho Road
Adelanto, CA 92301



Fee Due

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| MILTON ALBERTO MARTINEZ-AVELAR, <br><br> Petitioner <br><br> vs. <br><br> ALEJANDRO MAYORKAS, in his official capacity as Secretary of the Department of Homeland Security; MERRICK GARLAND, in his official capacity as Attorney General of the United States; TAE JOHNSON, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement; DAVID MARIN, in his official capacity as Los Angeles Field Office Director, Office of Detention and Removal Operations, U.S. Immigration and Customs Enforcement; ANDRE QUINONES, in his official capacity as Deputy Field Office Director, Office of Detention and Removal Management, U.S. Immigration and Customs Enforcement; GABRIEL VALDEZ, in | Case No. **EDCV21-0543**-DMG-AFM <br><br> DHS Case No.: A#091-785-928 <br><br> **PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN FEDERAL CUSTODY (28 U.S.C. § 2241); REQUEST FOR <u>EMERGENCY</u> TRO; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> (Filed in lieu of Form CV-27) |

his official capacity as Officer in Charge)
of the Adelanto Detention Facility;     )
GIOVANNI PALACIO, in his official     )
capacity as Supervisory Detention and     )
Deportation Officer, Office of Detention)
and Removal Operations, U.S.     )
Immigration and Customs Enforcement;)
JAMES JANECKA, in his official     )
capacity as Warden of the Adelanto     )
Detention Facility,     )
     )
_____Respondents._____)

## PETITION

1.    **Place of Detention:** At the time of filing the initial petition, Petitioner is

detained by Immigration and Customs and Enforcement (ICE) at the Adelanto

Detention Center in Adelanto, California.

2.    **Name and Location of Court Which Imposed Removal Order:** Executive

Office of Immigration Review, Los Angeles, California.

3.    **The Immigration Case Number**: DHS (Department of Homeland Security)

A#091-785-928.

4.    **The Date Upon Which Removal Order Was Imposed:** Petitioner was

ordered removed by an Immigration Judge on October 23, 2003.

5.    **Check Whether a Finding of Guilty Was Made:** Not applicable.

**6.    If You Were Found Guilty After a Plea of Not Guilty, Check Whether that Finding Was Made by A Jury or Judge Sitting Without a Jury:** Not applicable.

**7.    Did you appeal the decision, file a grievance, or seek an administrative remedy?** Yes.

**8.    If Yes, Provide the Following:**

**a.    (1) Name of authority, agency, or court:** U.S. Department of Homeland Security, U.S. Immigrations and Customs Enforcement, Los Angeles Field Office

**(2) Result:** Denied

**(3) Date of result:** March 23, 2021

**(4) Citation or number of opinion:** Not applicable

**(5) Grounds raised (list each):**

**(a)** On February 17, 2021, Mr. Martinez-Avelar requested a stay of removal pursuant to 8 C.F.R. 241.6 (Form I-246) and the January 20, 2021, Memorandum from the U.S. Department of Homeland Security regarding Review of and Interim Revision to Civil Immigration Enforcement and Removal Policies and Priorities, arguing that Mr. Martinez-Avelar warranted a stay of removal based on his lengthy residence in the United States, the danger that he would face if he were to be removed to El Salvador, and his substantial connections to the country,

including his U.S. citizen mother, who suffers from severe medical conditions and relies on Mr. Martinez-Avelar as his primary caregiver and support.

**b.**     **(1) Name of authority, agency, or court:** U.S. Department of Homeland Security, U.S. Immigration and Customs Enforcement (ICE) Office of Enforcement and Removal Operations (ERO).

   (2) **Result:** Denied

   (3) **Date of result:** March 29, 2021

   (4) **Citation or number of opinion:** Not applicable

   (5) **Grounds raised (list each):**

   **(a)** On March 24, 2021, Mr. Martinez-Avelar requested that U.S. Immigration and Customs Enforcement (ICE) Office of Enforcement and Removal Operations (ERO) review his case to determine that he does not constitute an enforcement priority pursuant to the February 18, 2021, Memorandum from Tae Johnson, Acting Director of U.S. Immigration and Customs Enforcement, providing Interim Guidance on Civil Immigration Enforcement and Removal Priorities.  In his request, Mr. Martinez-Avelar argued and provided evidence illustrating that he does not fall under the three listed priority categories of being a risk to national security, border security, or public safety, and that he should not be removed from the country as a matter of discretion given his clean criminal history for the past two decades, his substantial

ties to the United States, and the irreparable harm that he and his U.S. citizen

mother would suffer if he is removed and is unable to remain in the country.

9.      **State concisely every ground on which you claim you are being held
unlawfully. Summarize briefly, the facts supporting each ground**.


**a. Ground One: Petitioner's detention violates the Due Process Clause
of the Fifth Amendment and the Administrative Procedure Act.**

"Freedom from imprisonment—from government custody, detention, or

other forms of physical restraint—lies at the heart of the liberty that [the Due

Process] Clause protects." *Zadvydas* 533 U.S. at 690. The Supreme Court

"repeatedly has recognized that civil commitment *for any purpose* constitutes a

significant deprivation of liberty that requires due process protection." *Addington v.

Texas*, 441 U.S. 418, 425 (1979) (emphasis added). Additionally, the Court has

long held that civil detention is unconstitutional absent a sufficient justification and

strong procedural protections. *See generally, e.g., Zadvydas*, 533 U.S. at 690;

*Foucha v. Louisiana*, 504 U.S. 71, 80–83 (1992); *United States v. Salerno*, 481

U.S. 739 (1987); *Addington*, 441 U.S. at 425–27, 433; *Jackson v. Indiana*, 406 U.S.

715 (1972).

Moreover, as detention grows in length, the justification for the increasingly

severe deprivation of individual liberty must also grow stronger. *See, e.g., Kansas

v. Hendricks*, 521 U.S. 346, 363-64 (1997); *see also Chavez-Alvarez*, 783 F.3d at

474 (citing *Diop*, 656 F.3d at 232, 234); *Casas-Castrillon v. Dep't of Homeland Sec.,* 535 F.3d 942, 950 (9th Cir. 2008).

Further, ICE's actions fall under the purview of the Administrative Procedure Act (APA), 5 U.S.C. § 701 et seq., in that the APA grants the judiciary oversight over all agency actions. *See* 5 U.S.C. § 706.  Under 5 U.S.C. § 706(2)(A), a reviewing court must "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

**Supporting Facts**: U.S. Immigration and Customs Enforcement (ICE) has deprived Mr. Martinez-Avelar of his due process rights by unjustifiably detaining him against its own department's policies and guidelines.  In its March 23, 2021, decision denying Mr. Martinez-Avelar's application for a Stay of Deportation or Removal, the Los Angeles ICE Field Office indicated that Mr. Martinez-Avelar did not warrant discretionary relief because it "would not conform to this agency's priority of removing from the United States those non-citizen[s] who pose a threat to public safety."  See Exhibit A.  Following this decision, on March 24, 2021, Mr. Martinez-Avelar requested review of this decision by contacting ICE's Office of Enforcement and Removal Office, where he clearly detailed pursuant to the February 18, 2021, Johnson memorandum, how he does not fall within the priorities per ICE's own guidelines.

Per the February 18, 2021, Johnson memorandum, ICE provides three
priority categories for the removal of noncitizens: national security, border security,
and public safety. *See* Exhibit B, Johnson Memo at 4.  Regarding the national
security priority category, "a noncitizen is presumed to be a national security
enforcement and removal priority if: 1) he or she has engaged in or is suspected of
engaging in terrorism or terrorism-related activities; 2) he or she has engaged in or
is suspected of engaging in espionage or espionage related activities; or 3) his or
her apprehension, arrest, or custody is otherwise necessary to protect the national
security of the United States." *Id.*  The memorandum notes that "[g]eneral criminal
activity does not amount to a national security threat . . . ." *Id.*

The Johnson memorandum further provides that "[a] noncitizen is presumed
to be a border security enforcement and removal priority if: 1) he or she was
apprehended at the border or a port of entry while attempting to unlawfully enter
the United States on or after November 1, 2020; or 2) he or she was not physically
present in the United States before November 1, 2020." *Id.*

Finally, the Johnson memorandum indicates that "[a] noncitizen is presumed
to be a public safety enforcement and removal priority if he or she poses a threat to
public safety and: 1) he or she has been convicted of an aggravated felony as
defined in section 101(a)(43) of the INA; or 2) he or she has been convicted of an
offense for which an element was active participation in a criminal street gang, as
defined in 18 U.S.C. § 521(a), or is not younger than 16 years of age and

7

intentionally participated in an organized criminal gang or transnational criminal organization to further the illegal activity of the gang or transnational criminal organization." *Id.* at 4-5.

The memorandum further provides that "[i]n evaluating whether a noncitizen currently 'pose[s] a threat to public safety,' officers and agents are to consider the extensiveness, seriousness, and recency of the criminal activity. Officers and agents are to also consider mitigating factors, including, but not limited to, personal and family circumstances, health and medical factors, ties to the community, evidence of rehabilitation, and whether the individual has potential immigration relief available." *Id.* at 5.

Here, Mr. Martinez-Avelar submitted evidence and argument to ICE demonstrating that he should not be found to fall in any of these categories. He has never engaged in or has been accused or suspected of engaging in any terrorism – or espionage-related activities – or any activities that would constitute a threat to national security. Additionally, Mr. Martinez-Avelar last entered the United States in or around 2000, where he has remained continuously, thereby illustrating that he does not constitute a risk to border security under Priority Category 2.

Finally, Mr. Martinez-Avelar submitted evidence indicating that he has not been convicted of an aggravated felony. He was associated with a Salvadoran gang very early in life; however, Mr. Martinez-Avelar left and repudiated gang membership nearly three decades ago. His claim for asylum is based on retribution

from the gang due to his withdrawal. He has rehabilitated himself into an outstanding member of his church and community.  Mr. Martinez-Avelar's criminal history is distant, and he has suffered no convictions for approximately two decades – a continuous 20-year span of rock-solid rehabilitation and good moral character.  Importantly, the mitigating factors present in Mr. Martinez-Avelar's case further comport with ICE's guidelines to find him not to be a priority for removal: Mr. Martinez-Avelar's U.S. citizen mother suffers from a number of serious ailments, including arthritis, kidney failure, and weakness in her lower extremities. She is wheelchair bound and suffered two strokes in the past.  Mr. Martinez-Avelar is his mother's primary caretaker and cares for her everyday essential needs, including bathing, cooking, feeding, and ensuring she takes her medications. Moreover, it should be further noted that Mr. Martinez had been severely injured by the gang when he was in El Salvador last, and if Mr. Martinez is removed to El Salvador, he will more than likely be killed by the gang there for his prior involvement in the gang, a particular social group that the Fourth Circuit recently recognized as a viable claim for asylum and withholding of removal. *See Amaya v. Rosen*, Docket No. 19-1619 (4th Cir. 2021). This may constitute an avenue of relief from removal for Mr. Martinez-Avelar.

Petitioner is also the beneficiary of an I-130 visa petition filed by his U.S.-citizen mother, which can provide him an avenue to obtain permanent residence.

On March 29, 2021, ICE once again denied Mr. Martinez-Avelar's decision, indicating that the prior decision issued by the Los Angeles ICE Field Office "would remain in place." See Exhibit C. The decision did not explain how it came to this decision, despite ICE stating on its website that it "is committed to transparency, collaboration, and resolving concerns with our stakeholders," which includes "individuals detained in ICE custody, the public, non-governmental organizations, faith-based organizations, academic institutions, attorneys, and advocacy groups." Given the arguments and evidence submitted, however, ICE clearly went against its own enforcement priorities and thereby violated Mr. Martinez-Avelar's right to due process by arbitrarily and unjustifiably detaining him.

**10.   Have You Filed Previous Petitions of Habeas Corpus, Motions Under Section 2255 of Title 28, United States Code, or Any Other Applications, Petitions or Motions About the Issues Raised in This Petition?** No.

**11.   If Your Answer to Question No. 10 Was Yes, Give the Following Information:**

       **a.   (1) Name of Court**
           **(2) Nature of proceeding**
           **(3) Grounds raised**
           **(4) Result**
           **(5) Date of result**
           **(6) Citation or number of any written opinions or orders entered pursuant to each disposition.** Not applicable.

**12.    If you did not file a motion under Section 2255 of Title 28, United States Code, or if you filed such a motion and it was denied, state why your remedy by way of such motion is inadequate or ineffective to test the legality of your detention.** Not applicable.

**13.    Are you presently represented by counsel?** No.

**14.    If you are seeking leave to proceed in forma pauperis, have you completed the declaration setting forth the required information?** Not applicable.

Wherefore, Petitioner respectfully prays that this Court to:

a. Assume jurisdiction over this matter;

b. Enjoin Respondents from transferring the Petitioner outside the jurisdiction of the Los Angeles Field Office, pending the resolution of this case;

c. Issue a Writ of Habeas Corpus ordering Respondents to release Petitioner immediately, or, in the alternative, ordering Respondents to provide Petitioner with a constitutionally adequate, individualized hearing before an impartial adjudicator at which Respondents bear the burden of establishing that Petitioner's continued detention is justified;

d. Issue a Temporary Restraining Order restraining Respondents from removing Petitioner from the country pending the resolution of this case and ordering Respondents to immediately cease the unlawful seizure and detention of Petitioner; and

e. Grant such further relief as the Court deems just and proper.


I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

DATED: _03/29/2021_          By: _____

MILTON MARTINEZ-AVELAR
Petitioner in Pro Per

# EXHIBIT A

Office of Enforcement and Removal Operations

**U.S. Department of Homeland Security**
300 N. Los Angeles Street, Room 2500
Los Angeles, CA  90012



**U.S. Immigration and Customs Enforcement**

March 23, 2021

Law Office of Edith Nazarian
21911 Sherman Way
Canoga Park, Ca. 91303

Re:  Application for a Stay of Deportation or Removal, Form I-246, for Milton Alberto MARTINEZ-Avelar, A091 785 928.

Ms. Nazarian,

This is in response to the Application for Stay of Deportation and Removal, Form I-246, which you filed on behalf of your client Milton Alberto MARTINEZ-Avelar on February 17, 2021. You have requested that your client's removal be stayed for an indefinite period for humanitarian reasons.

After careful consideration of all the factors addressed in your client's Application for a Stay of Deportation or Removal, it has been determined that the granting of such discretionary relief is not warranted in this case, as the granting of such discretionary relief would not conform to this agency's priority of removing from the United States those non-citizen who pose a threat to public safety.

Therefore, your client's Application for a Stay of Deportation or Removal is denied. There is no appeal of this decision.

Sincerely,

Andre Quinones
Deputy Field Office Director

# EXHIBIT B

Policy Number: 11090.1
FEA Number: 306-112-002b

*Office of the Director*

**U.S. Department of Homeland Security**
500 12ᵗʰ Street, SW
Washington, DC 20536



**U.S. Immigration
and Customs
Enforcement**

February 18, 2021

MEMORANDUM FOR:        All ICE Employees

FROM:        Tae D. Johnson
        Acting Director

SUBJECT:        Interim Guidance: Civil Immigration Enforcement and
        Removal Priorities

Purpose

This memorandum establishes interim guidance in support of the interim civil immigration
enforcement and removal priorities that Acting Secretary Pekoske issued on January 20, 2021.
Acting Secretary Pekoske issued the interim priorities in his memorandum titled, *Review of and
Interim Revision to Civil Immigration Enforcement and Removal Policies and Priorities* (Interim
Memo).

This interim guidance is effective immediately. It applies to all U.S. Immigration and Customs
Enforcement (ICE) Directorates and Program Offices, and it covers enforcement actions, custody
decisions, the execution of final orders of removal, financial expenditures, and strategic
planning.

This interim guidance will remain in effect until Secretary Mayorkas issues new enforcement
guidelines. The Secretary has informed me that he will issue new guidelines only after
consultation with the leadership and workforce of ICE, U.S. Customs and Border Protection, and
other Department of Homeland Security (Department) agencies and offices. He anticipates
issuing these guidelines in less than 90 days.

I have requested approval of certain revisions to the Interim Memo until the Secretary issues new
enforcement guidelines. My requested revisions have been approved, and they are incorporated
into this guidance. To the extent this guidance conflicts with the Interim Memo, this guidance
controls. As you will read below, the revisions include, but are not limited to: (1) authorization to
apprehend presumed priority noncitizens[1] in at-large enforcement actions without advance
approval; (2) the inclusion of current qualifying members of criminal gangs and transnational
criminal organizations as presumed enforcement priorities; (3) authorization to apprehend

---

[1] For purposes of this memorandum, "noncitizen" means any person as defined in section 101(a)(3) of the
Immigration and Nationality Act (INA).

Interim Guidance: Civil Immigration Enforcement and Removal Priorities
Page 2 of 7

without prior approval other presumed priority noncitizens who are encountered during
enforcement operations; (4) how to evaluate whether a noncitizen who is not a presumed priority
nevertheless poses a public safety threat and should be apprehended; (5) the further delegation of
approval authority; and (6) the importance of providing advance notice of at-large enforcement
actions to state and local law enforcement.

Section C of the Interim Memo has been enjoined. This memorandum does not implement, nor
take into account, Section C. This memorandum implements Section B (Interim Civil
Enforcement Guidelines).

Background

On January 20, 2021, President Biden issued Executive Order (EO) 13993, Revision of Civil
Immigration Enforcement Policies and Priorities, 86 Fed. Reg. 7051 (Jan. 25, 2021), which
articulated the Administration's baseline values and priorities for the enforcement of the civil
immigration laws.

On the same day, Acting Secretary Pekoske issued the Interim Memo. The Interim Memo did
four things. First, it directed a comprehensive Department-wide review of civil immigration
enforcement policies. Second, it established interim civil immigration enforcement priorities for
the Department. Third, it instituted a 100-day pause on certain removals pending the review.
Fourth, it rescinded several existing policy memoranda, including two ICE-related memoranda,
as inconsistent with EO 13993.[2] The Interim Memo further directed that ICE issue interim
guidance implementing the revised enforcement priorities and the removal pause.

On January 26, 2021, the U.S. District Court for the Southern District of Texas issued a
temporary restraining order (TRO) enjoining the Department from enforcing and implementing
the 100-day removal pause in Section C.

Like other national security and public safety agencies, ICE operates in an environment of
limited resources. Due to these limited resources, ICE has always prioritized, and necessarily
must prioritize, certain enforcement and removal actions over others.

In addition to resource constraints, several other factors render ICE's mission particularly
complex. These factors include ongoing litigation in various fora; the health and safety of the
ICE workforce and those in its custody, particularly during the current COVID-19 pandemic; the
responsibility to ensure that eligible noncitizens are able to pursue relief from removal under the
immigration laws; and the requirements of, and, relationships with, sovereign nations, whose
laws and expectations can place additional constraints on ICE's ability to execute final orders of
removal.

---

[2] Memorandum from Matthew T. Albence, Exec. Assoc. Dir., ICE, to All ERO Employees, *Implementing the
President's Border Security and Interior Immigration Enforcement Policies* (Feb. 21, 2017); Memorandum from
Tracy Short, Principal Legal Advisor, ICE, to All OPLA Attorneys, *Guidance to OPLA Attorneys Regarding
Implementation of the President's Executive Orders and the Secretary's Directives on Immigration Enforcement*
(Aug. 15, 2017).

Interim Guidance: Civil Immigration Enforcement and Removal Priorities
Page 3 of 7

Accordingly, in executing its critical national security, border security, and public safety mission, the Department must exercise its well-established prosecutorial discretion and prioritize its limited resources to most effectively achieve that mission.

Civil Immigration Enforcement and Removal Priorities

In support of the interim priorities, the guidance established in this memorandum shall be applied to all civil immigration enforcement and removal decisions made after the issuance of this memorandum. The civil immigration enforcement and removal decisions include, but are not limited to, the following:[3]

- Deciding whether to issue a detainer, or whether to assume custody of a noncitizen subject to a previously issued detainer;
- Deciding whether to issue, reissue, serve, file, or cancel a Notice to Appear;
- Deciding whether to focus resources only on administrative violations or conduct;
- Deciding whether to stop, question, or arrest a noncitizen for an administrative violation of the civil immigration laws;
- Deciding whether to detain or release from custody subject to conditions;
- Deciding whether to grant deferred action or parole; and
- Deciding when and under what circumstances to execute final orders of removal.

For ease of reference, the interim priorities identified in the Interim Memo, and as revised by this guidance, are set forth below along with further explanation.

As a preliminary matter, it is vitally important to note that the interim priorities do not require or prohibit the arrest, detention, or removal of any noncitizen. Rather, officers and agents are expected to exercise their discretion thoughtfully, consistent with ICE's important national security, border security, and public safety mission. Enforcement and removal actions that meet the criteria described below are presumed to be a justified allocation of ICE's limited resources. Actions not reflected in the criteria described below may also be justified, but they are subject to advance review as outlined further below.

In determining whether to pursue an action that falls outside the criteria described below, all relevant facts and circumstances regarding the noncitizen should be considered. For instance, officers and agents should consider: whether there are criminal convictions; the seriousness and recency of such convictions, and the sentences imposed; the law enforcement resources that have been spent; whether a threat can be addressed through other means, such as through recourse to criminal law enforcement authorities at the federal, state, or local level, or to public health and other civil authorities at the state or local level; and, other relevant factors (including, for example, the mitigating factors identified on page 5).

---

[3] As discussed above, the Department is enjoined from enforcing the Immediate 100-Day Pause on Removals in the Interim Memo. This following interim guidance should not be read to permit implementation of Section C of the Interim Memo.

*Criteria Defining Cases That Are Presumed to be Priorities*

**Priority Category 1: National Security**. A noncitizen is *presumed* to be a national security enforcement and removal priority if:

1) he or she has engaged in or is suspected of engaging in terrorism or terrorism-related activities;

2) he or she has engaged in or is suspected of engaging in espionage or espionage-related activities;[4] or

3) his or her apprehension, arrest, or custody is otherwise necessary to protect the national security of the United States.

In evaluating whether a noncitizen's "apprehension, arrest, or custody is otherwise necessary to protect" national security, officers and agents should determine whether a noncitizen poses a threat to United States sovereignty, territorial integrity, national interests, or institutions. General criminal activity does not amount to a national security threat (as distinguished from a public safety threat) and is discussed below.

**Priority Category 2: Border Security**. A noncitizen is *presumed* to be a border security enforcement and removal priority if:

1) he or she was apprehended at the border or a port of entry while attempting to unlawfully enter the United States on or after November 1, 2020[5]; or

2) he or she was not physically present in the United States before November 1, 2020.

To be clear, the border security priority includes any noncitizen who unlawfully entered the United States on or after November 1, 2020.

**Priority Category 3: Public Safety**. A noncitizen is *presumed* to be a public safety enforcement and removal priority if he or she poses a threat to public safety and:

1) he or she has been convicted of an aggravated felony as defined in section 101(a)(43) of the INA[6]; or

---

[4] For purposes of the national security enforcement priority, the terms "terrorism or terrorism-related activities" and "espionage or espionage-related activities" should be applied consistent with (1) the definitions of "terrorist activity" and "engage in terrorist activity" in section 212(a)(3)(B)(iii)-(iv) of the INA, and (2) the manner in which the term "espionage" is generally applied in the immigration laws.

[5] The statutory mandates in Section 235 of the INA (regarding asylum seekers) continue to apply to noncitizens.

[6] This criterion tracks Congress's prioritization of aggravated felonies for immigration enforcement actions. Whether an individual has been convicted of an aggravated felony is a complex question that may involve securing and analyzing a host of conviction documents, many of which may not be immediately available to officers and agents. Even when all conviction documents are available, whether a conviction is for an aggravated felony may be a novel question under applicable law. Accordingly, in deciding whether a noncitizen has been convicted of an

2) he or she has been convicted of an offense for which an element was active participation in a criminal street gang, as defined in 18 U.S.C. § 521(a), or is not younger than 16 years of age and intentionally participated in an organized criminal gang or transnational criminal organization to further the illegal activity of the gang or transnational criminal organization.

In evaluating whether a noncitizen currently "pose[s] a threat to public safety," officers and agents are to consider the extensiveness, seriousness, and recency of the criminal activity. Officers and agents are to also consider mitigating factors, including, but not limited to, personal and family circumstances, health and medical factors, ties to the community, evidence of rehabilitation, and whether the individual has potential immigration relief available.

Officers are to base their conclusions about intentional participation in an organized criminal gang or transnational criminal organization on reliable evidence and consult with the Field Office Director (FOD) or Special Agent in Charge (SAC) in reaching this conclusion.

Particular attention is to be exercised in cases involving noncitizens who are elderly or are known to be suffering from serious physical or mental illness. Similarly, particular attention is to be exercised with respect to noncitizens who have pending petitions for review on direct appeal from an order of removal; have filed only one motion to reopen removal proceedings, and such a motion either remains pending or is on direct appeal via a petition for review; or have pending applications for immigration relief and are prima facie eligible for such relief. In such cases, execution of removal orders should have a compelling reason and are to have approval from the FOD.

A civil enforcement or removal action that does not meet the above criteria for presumed priority cases will require preapproval as described below.

<u>Enforcement and Removal Actions: Approval, Coordination, and Data Collection</u>

To ensure compliance with this guidance and consistency across geographic areas of responsibility, and to facilitate a dialogue between headquarters and field leadership about the effectiveness of the interim guidance, ICE will require that field offices collect data on the nature and type of enforcement and removal actions they perform. In addition, ICE will require field offices to coordinate their operations and obtain preapproval for enforcement and removal actions that do not meet the above criteria for presumed priority cases. The data and coordination will inform the development of the Secretary's new enforcement guidance.

*No Preapproval Required for Presumed Priority Cases*

Officers and agents need not obtain preapproval for enforcement or removal actions that meet the above criteria for presumed priority cases, beyond what existing policy requires and what a supervisor instructs.

---

aggravated felony for purposes of this memorandum, officers and agents must have a good-faith belief based on either a final administrative determination, available conviction records, or the advice of agency legal counsel.

Interim Guidance: Civil Immigration Enforcement and Removal Priorities
Page 6 of 7

*Preapproval for Other Priority Cases*

Any civil immigration enforcement or removal actions that do not meet the above criteria for presumed priority cases will require preapproval from the FOD or SAC. In deciding to undertake an enforcement action or removal, the agent or officer must consider, in consultation with his or her leadership, the nature and recency of the noncitizen's convictions, the type and length of sentences imposed, whether the enforcement action is otherwise an appropriate use of ICE's limited resources, and other relevant factors. In requesting this preapproval, the officer or agent must raise a written justification through the chain of command, explaining why the action otherwise constitutes a justified allocation of limited resources, and identify the date, time, and location the enforcement action or removal is expected to take place.

The approval to carry out an enforcement action against a particular noncitizen will not authorize enforcement actions against other noncitizens encountered during an operation if those noncitizens fall outside the presumption criteria identified above. An approval to take an enforcement action against any other noncitizen encountered who is not a presumed priority must be separately secured as described above.

In some cases, exigent circumstances and the demands of public safety will make it impracticable to obtain preapproval for an at-large enforcement action. While it is impossible to preconceive all such circumstances, they generally will be limited to situations where a noncitizen poses an imminent threat to life or an imminent substantial threat to property. If preapproval is impracticable, an officer or agent should conduct the enforcement action and then request approval as described above within 24 hours following the action.[7]

As always, it is important that ICE endeavor to remove noncitizens with final removal orders who have remained in post-order detention for more than 90 days. ICE will continue to review such noncitizens' cases on a regular basis, consistent with existing law and policy. ICE will endeavor to remove such noncitizens consistent with legal requirements and national, border security, and public safety priorities.

Periodically, ICE receives requests to exercise some form of individualized discretion in the interests of law and justice. ICE will create and maintain a system by which personnel can evaluate these individualized requests.

*Notice of At-Large Enforcement Actions*

The execution of an at-large enforcement action should be preceded by notification to the relevant state and local law enforcement agency or agencies. This notification will advance

---

[7] Where approval is sought following the enforcement action due to exigent circumstances, the request shall explain the exigency, where and when the enforcement activity took place, and whether the noncitizen is currently detained. Additionally, when the location of a proposed or completed enforcement action is a courthouse, as defined in ICE Directive 11072.1: Civil Immigration Enforcement Actions Inside Courthouses (Jan. 10, 2018, or as superseded), or a sensitive location, as defined in ICE Directive No. 10029.2, Enforcement Actions at or Focused on Sensitive Locations (Oct. 24, 2011, or as superseded), that should be explicitly highlighted in the request.

Interim Guidance: Civil Immigration Enforcement and Removal Priorities
Page 7 of 7

public safety and help ensure that planned immigration enforcement actions do not improperly interfere with state and local law enforcement investigations and actions.

*Weekly Reporting of All Enforcement and Removal Actions*

The Director will review all enforcement actions to ensure compliance with this guidance and consistency across geographic areas of responsibility and to facilitate a dialogue between headquarters and field leadership about the effectiveness of the interim priorities.

Each Friday, the Executive Associate Directors for Enforcement and Removal Operations and Homeland Security Investigations will compile and provide to the Office of the Director, the Office of the Deputy Director, and the Office of Policy and Planning (OPP), a written report: (1) identifying each enforcement action taken in the prior week, including the applicable priority criterion, if any; (2) providing a narrative justification of the action; and (3) identifying the date, time, and location of the action.

In addition, each Friday the Executive Associate Director for Enforcement and Removal Operations will provide to the Office of the Director, the Office of the Deputy Director, and OPP, a written report: (1) identifying each removal in the prior week, including the applicable priority criterion, if any; (2) providing a narrative justification of the removal; and (3) identifying the date, time, and location of the removal.

These reporting requirements will be assessed periodically during this interim period to ensure that they are both productive and manageable.

The weekly reports will be made available to the Office of the Secretary.

Questions

Questions regarding this interim guidance or the Interim Memo should be directed to OPP through the chain of command and Directorate or Program Office leadership. Answers to frequently asked policy questions will be published on OPP's inSight page on an ongoing basis. Please note, however, that case-specific questions should generally be addressed by Directorate or Program Office leadership.

No Private Right Statement

These guidelines and priorities are not intended to, do not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by any party in any administrative, civil, or criminal matter.

# EXHIBIT C



Edith Nazarian <edith@berkelegal.com>

---

## URGENT: Case Review Request for Detainee Milton Martinez Avelar (A091-785-928)

2 messages

**Edith Nazarian** <edith@berkelegal.com>                                     Wed, Mar 24, 2021 at 2:59 PM
To: icecasereview@ice.dhs.gov
Bcc: contact+585520c5-03d0-4db9-815f-186750f3e9bb@mailsync.practicepanther.com

Dear ERO Senior Reviewing Official,

Our office represents Mr. Milton Martinez Avelar (A091-785-928), who was placed in detention today and is at imminent risk of being removed from the United States. Mr. Martinez is under a final order of removal and was detained this morning after reporting to the Los Angeles Field Office after his ICE Form I-246, Application for a Stay of Deportation or Removal, was denied.

**Please be advised that it is our office's firm belief that the denial of Mr. Martinez's stay was made in error because he should not be found to fall within the priorities listed in the February 18, 2021, Tae Johnson Memorandum regarding Civil Immigration Enforcement and Removal Priorities.**

1. Mr. Martinez does not pose a risk to national security.

Per the Johnson memorandum, "a noncitizen is *presumed* to be a national security enforcement and removal priority if: 1) he or she has engaged in or is suspected of engaging in terrorism or terrorism-related activities; 2) he or she has engaged in or is suspected of engaging in espionage or espionage related activities; or 3) his or her apprehension, arrest, or custody is otherwise necessary to protect the national security of the United States." See Johnson Memo at 4. The memorandum notes that "[g]eneral criminal activity does not amount to a national security threat . . . ." Id.

Here, Mr. Martinez has never engaged in or has been accused or suspected of engaging in any terrorism- or espionage-related activities or any activities that would constitute a threat to national security. For this reason, Mr. Martinez does not pose a threat to national security under Priority Category 1.

2. Mr. Martinez does not pose a risk to border security.

The Johnson memorandum provides that "[a] noncitizen is *presumed* to be a border security enforcement and removal priority if: 1) he or she was apprehended at the border or a port of entry while attempting to unlawfully enter the United States on or after November 1, 2020; or 2) he or she was not physically present in the United States before November 1, 2020." Id.

Here, as evidenced by his Notice to Appear, Mr. Martinez last entered the United States in or around 2000, where he has remained continuously. For this reason, Mr. Martinez does not constitute a risk to border security under Priority Category 2.

3. Mr. Martinez does not pose a risk to public safety.

Under the Johnson memorandum, "[a] noncitizen is *presumed* to be a public safety enforcement and removal priority if he or she poses a threat to public safety and: 1) he or she has been convicted of an aggravated felony as defined in section 101(a)(43) of the INA; or 2) he or she has been convicted of an offense for which an element was active participation in a criminal street gang, as defined in 18 U.S.C. § 521(a), or is not younger than 16 years of age and intentionally participated in an organized criminal gang or transnational criminal organization to further the illegal activity of the gang or transnational criminal organization." Id. at 4-5.

The memorandum further provides that "[i]n evaluating whether a noncitizen currently 'pose[s] a threat to public safety,' officers and agents are to consider the extensiveness, seriousness, and recency of the criminal activity. Officers and agents are to also consider mitigating factors, including, but not limited to, personal and family circumstances, health and medical factors, ties to the community, evidence of rehabilitation, and whether the individual has potential immigration relief available." Id. at 5 (emphasis added).

Here, as Mr. Martinez's California Department of Justice results and motion to vacate indicate, Mr. Martinez has not been convicted of an aggravated felony as the only convictions that could be argued to be aggravated felonies attributable to him (namely, a 1989 conviction under Case No. A979897 for Health & Safety section 11352 and a 1990 conviction under Case No. BA009902 for Penal Code section 211) were both vacated. Because Mr. Martinez's convictions were vacated on the grounds that his convictions were taken in violation of his statutory rights, the convictions are no longer valid for immigration purposes. See Matter of Adamiak, 23 I&N Dec. 878 (BIA 2006). Mr. Martinez further indicated that the

It should be noted that, while there is a controlled substance conviction listed on Mr. Martinez's California Department of Justice results from 2000 under Case No. BA194860 for Mr. Martinez, this conviction does not associate with his name or fingerprints and, in fact, does not relate to him because first, the defendant in that case was placed on 3 years probation and if Mr. Martinez was indeed the defendant there, his criminal conviction for petty theft in 2002 would have triggered a probation violation hearing; however, as the attached case docket in Case No. BA194860 shows, this did not occur. Further, the defendant in that case requested that his probation be modified to allow him to travel to Mexico in 2002; however, Mr. Martinez was in removal proceedings at the time, receiving a removal order in 2003, and therefore could not physically leave the United States without triggering a self-deportation, which he did not do. Thus, it defies logic to attribute this controlled substance conviction to Mr. Martinez.

Additionally, it should be noted that while Mr. Martinez participated in his early life in a gang, the ample evidence in the record demonstrates that Mr. Martinez, who left the gang almost three decades ago, has rehabilitated himself into an upstanding individual in his church and community. Mr. Martinez's criminal history has further been clear of any convictions for essentially two decades, which corroborates the fact that Mr. Martinez has rehabilitated himself. Finally, and significantly, as the August 19, 2020, letter from Dr. Herman Bell illustrates, Mr. Martinez's U.S. citizen mother suffers from a number of serious ailments, including arthritis, kidney failure, and weakness in her lower extremities. She is wheelchair bound and suffered two strokes in the past. <u>Mr. Martinez is his mother's primary caretaker and cares for her everyday essential needs, including bathing, cooking, feeding, and ensuring she takes her medications. Counsel attests that she spoke to Mr. Martinez's mother following her son's detention today, and she expressed serious concern about her situation, indicating that she has a doctor's appointment tomorrow but has no one to take her and that, because she cannot walk, if she ever falls, Mr. Martinez is the one who assists her to stand but she is now lacking this fundamental support.</u> Moreover, it should be further noted that Mr. Martinez had been severely injured by the gang when he was in El Salvador last, and if Mr. Martinez is removed to El Salvador, he will more than likely be killed by the gang there for his prior involvement in the gang, a particular social group that the Fourth Circuit recently recognized as being sufficiently particular for asylum and withholding of removal purposes in Amaya v. Rosen, Docket No. 19-1619 (4th Cir. 2021).

Thus, given Mr. Martinez's rehabilitation and clean record for the past twenty years, he does not constitute a threat to public safety under Priority Category 3, and in fact mitigating factors, which include his strong ties to the community, which include his U.S. citizen brothers and ailing U.S. citizen mother, whom Mr. Martinez primarily cares for, as well as the substantial danger that he faces if he is removed to El Salvador, compel a favorable finding of discretion in his case.

Attached please find documents supporting this request, including Form G-28, Mr. Martinez's declaration and photos evidencing the scars he received from being attacked by the gang previously, hardship and support letters with certificates showing rehabilitation, Mr. Martinez's California Department of Justice results, Mr. Martinez's Motion to Vacate and Order on his PC 211 conviction, court docket for Case No. BA194860 evidencing that the case does not associate with Mr. Martinez and 2003 Order of Removal, naturalization certificates for Mr. Martinez's mother and two brothers, and ICE's stay decision.

Thank you for your consideration and prompt attention to this matter. If you have any questions, or if there is anything else that you may need to assist you in your determination regarding this matter, please do not hesitate to contact me and let me know.

Sincerely,

Edith Nazarian
Attorney at Law

*Berke Law Offices, Inc.*
21911 Sherman Way
Canoga Park, CA 91303
Tel. 818-804-5729
Fax 818-337-2019

*This message, including attachments, is confidential and may contain information protected by the attorney-client privilege or work product doctrine. If you are not the addressee, any disclosure, copying, distribution, or use of the contents of this message are prohibited. If you have received this email in error, please destroy it and notify me immediately. Thank you.*

8 attachments

📎 **G-28_M.Martinez.pdf**
334K

📎 **Proof of Family Status_M.Martinez.pdf**
460K

📎 **Stay Decision_M.Martinez.pdf**
27K

📎 **Declaration and Photos_M.Martinez_compressed.pdf**
2493K

📎 **Cal DOJ_M.Martinez.pdf**
322K

📎 **Letters and Certificates_M.Martinez_compressed.pdf**
3029K

📎 **Motion to Vacate_M.Martinez.pdf**
912K

📎 **Docket and Removal Order_M.Martinez.pdf**
372K

To: Edith Nazarian <edith@berkelegal.com>, ICECaseReview <ICECaseReview@ice.dhs.gov>

Good Morning,

On March 24, 2021, you contacted U.S. Immigration and Customs Enforcement (ICE) via the Enforcement and Removal Operations (ERO) ICE Case Review mailbox to request a case review for Milton Martinez Avelar. Based upon ERO's consideration of your inquiry, including any supplemental information provided, the prior decision of the ERO field office handling this case will remain in place. Please note that there is no appeal of the agency's decision whether or not to exercise discretion in an individual alien's case.  If you have additional questions or concerns, please contact your local field office. A list of ERO field offices and their contact information is available here: http://www.ice.gov/contact/ero.

Thank you for contacting ICE.

Senior Reviewing Official

---

**From:** Edith Nazarian <edith@berkelegal.com>
**Sent:** Wednesday, March 24, 2021 4:59 PM
**To:** ICECaseReview <ICECaseReview@ice.dhs.gov>
**Subject:** URGENT: Case Review Request for Detainee Milton Martinez Avelar (A091-785-928)

**CAUTION:** This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize and/or trust the sender. Contact ICE SOC SPAM with questions or concerns.

[Quoted text hidden]